## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.Ş. AND BORUSAN MANNESMANN PIPE U.S. INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Court No. 21-00132 |
| UNITED STATES, ) ) | |
| Defendant, ) ) | |
| and ) ) | |
| WHEATLAND TUBE AND NUCOR TUBULAR PRODUCTS INC., ) ) ) | |
| Defendant-Intervenors. ) ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS'
### MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001
Telephone: (240) 449-5906
Facsimile:  (202) 482-8184
Email: JonZachary.Forbes@trade.gov

IN K. CHO
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile:  (202) 305-7644
Email:      In.K.Cho@usdoj.gov

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ...................................................................... 2

    I.  Administrative Determination Under Review ................................................... 2

    II.  Statement Of The Issues ................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT ................................................................................................................... 5

    I.  Standard Of Review ......................................................................................... 5

    II.  Commerce's Determination That Section 232 Duties Are United States Import Duties For Purposes Of 19 U.S.C. § 1677a(c)(2)(A) Is Supported By Substantial Evidence And In Accordance With Law ........................................................................ 7

        A.  Legal Framework ...................................................................................... 7

        B.  Commerce Lawfully Determined That Section 232 Duties Are Import Duties To Be Deducted From U.S. Price ......................................................... 9

    II.  Commerce's Determination To Deduct Section 232 Duties From Export Price And CEP In Excess Of 25 Percent Is Supported By Substantial Evidence And In Accordance With Law ................................................................... 22

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*AK Steel Corp. v. United States*,
    988 F. Supp. 594 (Ct. Int'l Trade 1997)........................................................................ 8

*American Institute for International Steel, Inc. v. United States*,
    806 F. App'x 982 (Fed. Cir. 2020)........................................................................ 17

*Apex Exports v. United States*,
    777 F.3d 1373 (Fed. Cir. 2015)........................................................................ 7

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)........................................................................ 5

*Bethlehem Steel Corp. v. United States*,
    27 F. Supp. 2d 201 (Ct. Int'l Trade 1998)........................................................................ 8

*Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*,
    494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ................................................................ passim

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
    419 U.S. 281 (1974)........................................................................ 19

*Chevron, U.S.A. v. Natural Resources Defense Council*,
    467 U.S. 837 (1984)........................................................................ 5, 6

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)........................................................................ 5

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)........................................................................ 5

*Deacero S.A.P.I. de C.V. v. United States*,
    996 F.3d 1283 (Fed. Cir. 2021)........................................................................ 24

*Federal Mogul Corp. v. United States*,
    813 F. Supp. 856 (Ct. Int'l Trade 1993)........................................................................ 8

*Forest Laboratories, Inc. v. United States*,
    403 F.Supp.2d 1348 (Ct. Int'l Trade 2005)........................................................................ 21

*Fujitsu General, Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996).........................................................................6, 10

*Hoogovens Staal BV v. United States*,
    4 F. Supp. 2d 1213 (Ct. Int'l Trade 1998)........................................................................ 8

*JBF RAK LLC v. United States*,
    790 F.3d 1358 (Fed. Cir. 2015)........................................................................ 6

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006)........................................................................ 5

*Nucor Corp. v. United States*,
    414 F.3d 1331 (Fed. Cir. 2005)........................................................................ 18

*PQ Corp. v. United States*,
    652 F. Supp. 724 (Ct. Int'l Trade 1987)........................................................................ 8

*Timken Co. v. United States*,
    354 F.3d 1334 (Fed. Cir. 2004)........................................................................ 6

*Torrington Co. v. United States.*,
    68 F.3d 1347 (Fed. Cir. 1995)........................................................................ 10

*Transpacific Steel LLC v. United States*,
   4 F.4th 1306 (Fed. Cir. 2021)..............................................................................4, 22, 24
*U.S. Steel Grp. v. United States*,
   96 F.3d 1352 (Fed. Cir. 1996) ......................................................................................... 6
*U.S. Steel Grp. v. United States*,
   15 F. Supp. 2d 892 (Ct. Int'l Trade 1998) ...................................................................... 8
*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ................................................................................................... 5, 6
*Wheatland Tube Co. v. United States*,
   495 F.3d 1355 (Fed. Cir. 2007) ............................................................................. passim
*Yama Ribbons and Bows Co., Ltd. v. United States*,
   865 F. Supp. 2d 1294 (Ct. Int'l Trade 2012)................................................................ 24
*Zenith Electronics Corp. v. United States*,
   77 F.3d 426 (Fed. Cir. 1996) ........................................................................................ 10

**Statutes**
19 U.S.C. § 2132 ............................................................................................................... 15
19 U.S.C. § 2137 ............................................................................................................... 20
19 U.S.C. § 1516a ............................................................................................................... 5
19 U.S.C. § 1675 ............................................................................................................... 15
19 U.S.C. § 1677a ...................................................................................................... passim
19 U.S.C. § 1862 ....................................................................................................... passim
19 U.S.C. § 2251 ......................................................................................................... 12, 15

**Regulations**
19 C.F.R. § 351.401 .......................................................................................................... 26

**Administrative Determinations**
*Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty*
   *Administrative Review*, 69 Fed. Reg. 19,153
      (Dep't Commerce Apr. 12, 2004) (*SSWR from Korea*) ......................................... 10, 12, 19, 21


**Other Authorities**
*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 11,625 (Mar. 15, 2018) (*Proclamation 9705*) ............................... passim
*Proclamation 9740 of April 30, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 20,683 (May 7, 2018) ................................................................................ 3
*Proclamation 9759 of May 31, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 25,857 (June 5, 2018) ................................................................................ 3
*Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United States*,
   83 Fed. Reg. 40,429 (Aug. 15, 2018) (*Proclamation 9772*) ........................................ 3
*Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted*
   *Under Section 232 of the Trade Expansion Act of 1962*,
      85 Fed. Reg. 40,202 (Dep't of Commerce July 6, 2020) (*Steel Report*).................................. 14

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| BORUSAN MANNESMANN BORU SANAYI ) <br> VE TICARET A.Ş. AND BORUSAN ) <br> MANNESMANN PIPE U.S. INC., ) <br> ) <br>             Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> UNITED STATES, ) <br> ) <br>             Defendant, ) <br> ) <br> and ) <br> ) <br> WHEATLAND TUBE AND NUCOR ) <br> TUBULAR PRODUCTS INC., ) <br> ) <br>             Defendant-Intervenors. ) | Court No. 21-00132 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**<u>MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully submits this opposition to the motion for judgment

upon the administrative record filed by plaintiffs, Borusan Mannesmann Boru Sanayi ve Ticaret

A.Ş. and Borusan Mannesmann Pipe U.S. Inc. (collectively, Borusan).  Borusan challenges the

final results issued by the United States Department of Commerce (Commerce) in the 2018-2019

administrative review of the antidumping duty order covering circular welded carbon steel

standard pipe and tube (CWP) products from Turkey.  The Court should deny Borusan's motion

because the final results are supported by substantial evidence and in accordance with law.

**STATEMENT PURSUANT TO RULE 56.2**

**I.      Administrative Determination Under Review**

The administrative determination under review is the final results of the 2018-2019

administrative review of the antidumping duty order covering CWP from Turkey.  *See Circular*

*Welded Carbon Steel Standard Pipe and Tube Products From Turkey: Final Results of*

*Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*,

85 Fed. Reg. 3,616 (Dep't of Commerce Jan. 22, 2020), and accompanying Issues and Decision

Memorandum (IDM) (P.R. 129) (collectively, *Final Results*).  The period of review is May 1,

2018, through April 30, 2019.

**II.      Statement Of The Issues**

1.  Whether Commerce's determination to treat Section 232 duties as United States

import duties and to deduct them from Borusan's export price and constructed export price

(CEP) is supported by substantial evidence and in accordance with law.

2.  Whether Commerce's determination to deduct Section 232 duties from export price

and CEP in excess of 25 percent is supported by substantial evidence and in accordance with

law.

**STATEMENT OF FACTS**

On March 8, 2018, the President exercised his authority under Section 232 of the Trade

Expansion Act of 1967 and issued *Proclamation 9705*.  *Proclamation 9705 of March 8, 2018*

*Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018)

(*Proclamation 9705*); *see also* 19 U.S.C. § 1862.  *Proclamation 9705* mandated imposition of a

global tariff of 25 percent on steel imports, with the following statement from the President:

> This relief will help our domestic steel industry to revive idled
> facilities, open closed mills, preserve necessary skills by hiring new
> steel workers, and maintain or increase production, which will reduce

> our Nation's need to rely on foreign producers for steel and ensure that
> domestic producers can continue to supply all the steel necessary for
> critical industries and *national defense*.  Under current circumstances,
> this tariff is necessary and appropriate to address the threat that
> imports of steel articles pose to the *national security*.

*See Proclamation 9705*, 83 Fed Reg. at 11,626 (emphasis added).[1]  The Section 232 duties went into effect on March 23, 2018.  *See id.* at 11627-28.  The President later issued *Proclamation 9772*, imposing heightened duties of an additional 25 percent on Turkish steel imports, starting in August 2018.  *Proclamation 9772*, 83 Fed. Reg. at 40,429.  Those additional duties were later removed by another proclamation in May 2019.  *See Proclamation 9886 of May 16, 2019 Adjusting Imports of Steel Into the United States*, 84 Fed. Reg. at 23,421 (May 16, 2019) (*Proclamation 9886*).

On July 15, 2019, Commerce published a notice of initiation of an administrative review of the antidumping duty order covering CWP from Turkey for the period of review May 1, 2018, through April 30, 2019.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 33,739 (Dep't of Commerce July 15, 2019).

In the *Preliminary Results*, Commerce treated Section 232 duties as "United States import duties" and deducted them from Borusan's export price and CEP (i.e., U.S. price) under 19 U.S.C. § 1677a(c)(2)(A).  Decision Memorandum for Preliminary Results (July 16, 2020) (PDM) at 10-12; *see also* Memorandum Placing Section 232 Memorandum on Record

---

[1] The President issued additional proclamations later.  *See, e.g.*, *Proclamation 9711 of March 22, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 13,361 (Mar. 28, 2018); *Proclamation 9740 of April 30, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 20,683 (May 7, 2018); *Proclamation 9759 of May 31, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 25,857 (June 5, 2018); *Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 40,429 (Aug. 15, 2018) (*Proclamation 9772*).

(Aug. 20, 2020) (Section 232 Memorandum) (P.R. 130)[2] at 6-10.  Commerce determined that, unlike Section 201 duties, Section 232 duties are not remedial in nature, are not temporary, and present no risk of imposing a double remedy.  PDM at 10-12; *see also* IDM at 21-24.

In its administrative case brief, Borusan challenged Commerce's interpretation that Section 232 duties are "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A).  *See* Borusan Administrative Case Br. (Sept. 16, 2020) (P.R. 114) (C.R. 123) at 1-17.  Borusan also submitted letters to Commerce requesting adjustments in light of this Court's ruling in *Transpacific Steel LLC v. United States*, No. 19-00009, which invalidated Section 232 duties for certain entries subject to the administrative review.[3]  *See* Borusan Notification Regarding Section 232 Tariffs (Dec. 4, 2020) (P.R 122); Borusan Notification Regarding Refund of Section 232 Tariffs (Feb. 18, 2021) (P.R. 125); *Transpacific Steel LLC v. United States*, 466 F. Supp. 3d 1246, 1251 (Ct. Int'l Trade 2020), *rev'd and remanded*, 4 F.4th 1306 (Fed. Cir. 2021).  In the *Final Results*, Commerce did not make the adjustments requested by Borusan, explaining that this Court's *Transpacific* ruling as to the additional 25 percent Section 232 duties was not final and that the record evidence did not support an adjustment. Specifically, Commerce found no record evidence showing: (1) that the relevant refunds had been provided by the United States Customs and Border Patrol (CBP); (2) that the exporters or producers set prices of subject merchandise relying on a promise of potential post-sale refunds

---

[2]  The "P.R." and "C.R." citations refer to public and confidential documents in the administrative record.

[3]  The Federal Circuit later upheld the constitutionality of the increased Section 232 tariffs under *Proclamation 9772.  See Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021).  As discussed in more detail below, as the date of this submission, the Federal Circuit has denied a petition for rehearing *en banc* and issued its mandate.  *Transpacific Steel LLC v. United States*, No. 20-2157 (Fed. Cir.), ECF No. 76 (order denying rehearing), ECF No. 78 (mandate).

pursuant to subsequent court decisions; and (3) post-sale refunds from the exporters and producers to the ultimate consumers. *See* Commerce Letter Regarding Borusan's Section 232 Notification (Mar. 15, 2021) (P.R. 130). For the *Final Results*, Commerce continued to treat Section 232 duties as United States import duties under 19 U.S.C. § 1677a(c)(2)(A). *See* IDM at 21-24.

## ARGUMENT

### I.   Standard Of Review

This Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not make Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When the Court reviews Commerce's statutory interpretations, it employs the two-pronged test established in *Chevron, U.S.A. v. Natural Resources Defense Council*. 467 U.S. 837, 842-43 (1984). The Court first examines "whether Congress has directly spoken to the

precise question at issue," and if it has, the agency must comply with Congress's clear intent. *Id*. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. In such cases, "{a}ny reasonable construction of the statute is a permissible construction," *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (citation and quotation marks omitted), and Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *Eurodif*, 555 U.S. at 316 (citation omitted). The Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11. Indeed, "the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Eurodif*, 555 U.S. at 316 (citation omitted).

Finally, this Court affords Commerce an especially great deal of deference "when a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory tests.'" *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)). In that circumstance, "Commerce 'may perform its duties in the way it believes most suitable.'" *Id.* (quoting *U.S. Steel Grp.*, 96 F.3d at 1362). Consequently, Commerce receives "tremendous deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers" when it exercises its technical expertise to select and apply methodologies to implement the dictates of the trade statute. *Fujitsu General, Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996).

II.     **Commerce's Determination That Section 232 Duties Are United States Import Duties For Purposes Of 19 U.S.C. § 1677a(c)(2)(A) Is Supported By Substantial Evidence And In Accordance With Law**

Commerce correctly determined that the phrase "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A) includes Section 232 duties.  Given the broad statutory language, "United States import duties," and the courts' conclusion that the language is ambiguous, Commerce's reasonable interpretation that is consistent with the statutory text warrants *Chevron* deference.  *See also Borusan Mannesmann Boru Sanayi v. Ticaret A.S.*, 494 F. Supp. 3d 1365, 1375-76 (Ct. Int'l Trade 2021).  Following the analyses that have been previously upheld, Commerce reasonably determined that Section 232 duties are more like "ordinary customs duties" properly deducted from export price and CEP.  Although Borusan contends that the phrase does not include Section 232 duties because, according to Borusan, Section 232 duties are similar to Section 201 duties,[4] which are not "United States import duties," that contention should be rejected.  Indeed, this Court has recently upheld Commerce's interpretation that the phrase "United States import duties" includes Section 232 duties.  *Id*.  Thus, Commerce's determination is supported by substantial evidence and in accordance with law.

A.     **Legal Framework**

The goal of Commerce's statutorily prescribed antidumping calculation is to compare the fair market value of the merchandise and the price in the United States.  *See* 19 U.S.C. § 1677b(a)(1)(B); 19 U.S.C. § 1677a(c)(2); 19 U.S.C. § 1677b(a)(6); *Apex Exports v. United States*, 777 F.3d 1373, 1374, 1375 (Fed. Cir. 2015) ("The overall goal {of the statutorily

---

[4] Section 201, 19 U.S.C. § 2251, "permits the President of the United States to impose safeguard duties on imported merchandise if the merchandise 'is being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing an article like or directly competitive with the imported article.'"  *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1357 (Fed. Cir. 2007) (quoting 19 U.S.C. § 2251).

prescribed antidumping calculation methodology} is to arrange an apples-to-apples comparison between the domestic and foreign price of merchandise.").  Accordingly, both export price and normal value are subject to adjustments, "so that they closely reflect the price of subject merchandise at a common point in the chain of commerce." *APEX Exports*, 777 F.3d at 1374. Under one of these adjustments, the statute directs Commerce to reduce a respondent's export price and constructed export price by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and *United States import duties*. . . ."  19 U.S.C. § 1677a(c)(2)(A) (emphasis added).

The term "United States import duties" is not defined in the statute.  *See* 19 U.S.C. § 1677a(c)(2)(A); *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1359-60 (Fed. Cir. 2007) ("Congress has not defined or explained the meaning or scope of 'United States import duties'").  Commerce has interpreted Section 1677a(c)(2)(A) as not including Section 201 duties, antidumping duties, or countervailing duties, and the agency does not deduct such duties from export price. *AK Steel Corp. v. United States*, 988 F. Supp. 594, 607 (Ct. Int'l Trade 1997); *Hoogovens Staal BV v. United States*, 4 F. Supp. 2d 1213, 1220 (Ct. Int'l Trade 1998); *U.S. Steel Grp. v. United States*, 15 F. Supp. 2d 892, 898-900 (Ct. Int'l Trade 1998); *Bethlehem Steel Corp. v. United States*, 27 F. Supp. 2d 201, 208 (Ct. Int'l Trade 1998); *see also Wheatland Tube*, 495 F.3d at 1366 (holding that Commerce reasonably interpreted 19 U.S.C. § 1677a(c)(2) to not include "special remedial" duties and that Section 201 duties are not "United States import duties" under 19 U.S.C. § 1677a(c)(2)); *PQ Corp. v. United States*, 652 F. Supp. 724, 737 (Ct. Int'l Trade 1987) (sustaining Commerce determination not to deduct antidumping duty cash deposits); *Federal Mogul Corp. v. United States*, 813 F. Supp. 856, 872 (Ct. Int'l Trade 1993) (same).

In comparing Section 201 duties with antidumping duties, the Federal Circuit in

*Wheatland Tube* made the following observations:

> (1) "{l}ike antidumping duties, {Section} 201 duties are remedial duties that provide relief from the adverse effects of imports;"
>
> (2) "{n}ormal customs duties, in contrast, have no remedial purpose;"
>
> (3) "antidumping and {section} 201 duties, unlike normal customs duties, are imposed based upon almost identical findings that the domestic industry is being injured or threatened with injury due to the imported merchandise;" and
>
> (4) "{Section} 201 duties are like antidumping duties . . . because they provide only temporary relief from the injurious effects of imports," whereas normal customs duties "have no termination provision, and are permanent unless modified by Congress."

*Wheatland Tube*, 495 F.3d at 1362-63.  The Federal Circuit also explained that "{t}o assess both

a safeguard duty and an antidumping duty on the same imports without regard to the safeguard

duty, would be to remedy substantially overlapping injuries twice."  *Id.* at 1365.

> **B.    Commerce Lawfully Determined That Section 232 Duties Are Import Duties To Be Deducted From U.S. Price**

Commerce correctly determined that Section 232 duties are United States import duties.

Consistent with its prior analyses of "United States import duties" under 19 U.S.C.

§ 1677a(c)(2)(A), Commerce analyzed whether Section 232 duties are more like "ordinary

customs duties," or "special duties" similar to Section 201 duties and antidumping duties.  *See*

IDM at 21-24.[5]  Commerce correctly rejected Borusan's argument that Section 232 duties are

---

[5] *See also Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153, 19,159 (Dep't Commerce Apr. 12, 2004) (*SSWR from Korea*) ("Although the AD law does not define the term 'United States import duties,' the Senate Report that accompanied the Antidumping Act of 1921 . . . contrasts antidumping duties (which it refers to as 'special dumping duties') with normal customs duties (which it refers to as 'United States import duties'). . . . Thus, Congress has long

similar to Section 201 duties, noting that Section 232 duties are not remedial, not temporary, and do not impose a double remedy. *See id.*

The phrase "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A) is ambiguous. *Wheatland Tube,* 495 F.3d at 1361. Accordingly, Commerce's interpretation of the phrase warrants *Chevron* deference if the interpretation is reasonable and consistent with the statutory text. *See Fujitsu General, Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) ("{W}e defer to the interpretation Commerce has given its own governing statute."); *Zenith Electronics Corp. v. United States*, 77 F.3d 426, 430 (Fed. Cir. 1996) ("{I}f there is no unambiguously expressed congressional intent, we must interpret the statute with deference to Commerce's interpretation. . . ."); *Torrington Co. v. United States.*, 68 F.3d 1347, 1351 (Fed. Cir. 1995) ("In antidumping cases, we accord substantial deference to Commerce's statutory interpretation, as the International Trade Administration is the 'master' of the antidumping laws.").

Here, Commerce's interpretation that Section 232 duties are United States import duties is reasonable. Commerce has provided adequate reasoning, which considered, among other things, the nature of Section 232 duties, the President's proclamations, and the Federal Circuit's precedent in *Wheatland Tube*, 495 F.3d at 1359. *See* IDM at 21-24. This Court has upheld Commerce's interpretation that accompanied the same reasoning. *See Borusan*, 494 F. Supp. 3d at 1375-76; *compare* IDM at 21-24, *with* Issues and Decision Memorandum for the Final Results of the 2017-2018 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon Steel Standard Pipe and Tube from Turkey, at 27-33, ECF No. 27-5, *Borusan*

---

recognized that at least some duties implementing trade remedies — including at least antidumping duties — are special duties that should be distinguished from ordinary customs duties.")) (citing S. Rep. No. 67-16 AT 4 (1921)).

*Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, Court No. 20-00015 (filed Mar. 19, 2020).  Thus, the Court should continue to uphold Commerce's interpretation in this case.

Borusan contends otherwise, arguing that Commerce's interpretation is unreasonable because it is inconsistent with the agency's determination that Section 201 duties are not United States import duties.  *But see Borusan*, 494 F. Supp. 3d at 1373 (noting that pertinent questions are "what is the purpose of the deduction for 'import duties' in the dumping margin calculation, and does reduction of price by Section 232 duties serve that purpose.").  Relying on *Wheatland Tube*, 495 F.3d at 1359, Borusan argues that, like Section 201 duties, Section 232 duties:  (1) are remedial; (2) are temporary; and (3) create a double remedy.  The Court should reject these arguments.

### 1.   Section 232 Duties Are Not Remedial Like Section 201 Duties

Commerce correctly determined Section 232 duties are not remedial because, unlike Section 201 duties, Section 232 duties focus on adjusting imports for national security concerns. IDM at 22.  Specifically, *Proclamation 9705* states that it "is necessary and appropriate to adjust imports of steel articles so that such imports will not threaten to impair the national security. . . ." *Proclamation 9705*, 83 Fed Reg. at 11,627.  Further, the text of Section 232 requires consideration of various "effects on the *national security* of imports of the article."  *See* 19 U.S.C. § 1862(b)(1)(A) (emphasis added).  As identified in *Proclamation 9705*, the particular national security risk at issue is that the domestic steel "industry will continue to decline, leaving the United States at risk of becoming reliant on foreign producers of steel to meet our national security needs — a situation that is fundamentally inconsistent with the safety and security of the American people."  *Proclamation 9705*, 83 Fed. Reg. at 11,627.  Thus, the statutory text and the stated purpose of Section 232 demonstrate that national security is the primary concern of Section 232 duties.

Commerce's determination is also consistent with its past practice.  In *SSWR from Korea*, Commerce found Section 201 duties were similar to antidumping duties and therefore special remedial duties because they provide "temporary relief for an industry suffering from serious injury." *SSWR from Korea*, 69 Fed. Reg. at 19,159.  Commerce considered that both Section 201 duties and antidumping duties require a determination of "material injury." *See Id.* at 19,160 n.29.  Commerce further determined that, although Section 201 and antidumping duties are not identical, Section 201 duties "are more like them in purpose and function than they are like ordinary customs duties." *Id*. at 19,159.  The Federal Circuit examined the phrase "United States import duties" in *Wheatland Tube* and determined that treating Section 201 duties as special duties was reasonable, in part, because Commerce lawfully concluded that those duties were remedial.  *Wheatland Tube*, 495 F. 3d at 1362.  The Federal Circuit stated that normal customs duties can be imposed "regardless of whether the U.S. industry is suffering adverse effects as a result of imports." *Id*.

The purpose of Section 232 duties is more similar to that of an ordinary import duty than the purpose of antidumping duties and Section 201 duties.  Antidumping duties "remedy sales by a foreign exporter in the U.S. market at less than fair value" and Section 201 duties "remedy the injurious effects on the U.S. industry of a significant surge in imports." *Wheatland Tube,* 495 F. 3d at 1362.  Thus, these types of duties are "directed at the same overarching purpose-protecting the bottom line of domestic producer." *Id.* at 1364.  In contrast, Section 232 duties do not focus on economic effects, but rather they focus on U.S. national security interests, as Commerce correctly explained.  *See* 19 U.S.C. § 1862(b)-(c); IDM at 22.

Borusan contends that Section 232 duties are remedial because they "focus" on "remedying injury to the domestic steel industry by the economic effects of imported steel."

Borusan Br. at 15-16.  Borusan argues: (1) the text of Section 232 directs the President and the Secretary to "take into consideration" the economic effects of imported steel; (2) such economic effects were the "primary focus" of the Secretary's findings in the investigation of imported steel, and the President "specifically referenced" those findings in *Proclamation 9705*; and (3) the President and the Secretary "recognized" an "overlap between AD and CVD duties and section 232."  *See id.* at 15-19.  Borusan is mistaken.

First, the text of Section 232 does not support Borusan's argument.  The statute requires the President to "take into consideration" the effects of foreign competition on domestic industries, but that requirement does not mean that those effects are the *primary focus* of the statute.  Indeed, the statute directs that these effects shall be considered *to the extent* that such considerations "impair the national security."  19 U.S.C. § 1862(d) (providing that President and Secretary "recognize the close relation of the economic welfare of the Nation *to our national security* . . . in determining whether such weakening of our internal economy may *impair the national security*.") (emphasis added).  And Borusan quotes the statutory text out of context to argue that the primary focus of Section 232 is to provide remedy to domestic industries.  The statutory text provides:

> For the purposes of this section, the Secretary and the President shall, *in the light of the requirements of national security* and without excluding other relevant factors, give consideration to domestic production needed for projected national defense requirements, the capacity of domestic industries to meet such requirements, existing and anticipated availabilities of the human resources, products, raw materials, and other supplies and services *essential to the national defense*, the requirements of growth of such industries and such supplies and services including the investment, exploration, and development necessary to assure such growth, and the importation of goods in terms of their quantities, availabilities, character, and use as those affect such industries *and the capacity of the United States to meet national security requirements.*

*Id.* (emphasis added).  Thus, the statute's fundamental concern relates to national security and does not prioritize the economic welfare of domestic industries.

Second, Borusan misconstrues the Secretary's findings and *Proclamation 9705*. According to Borusan, the "*Steel Report*'s principal conclusion is that steel imports were 'in such quantities' as to 'adversely impact the economic welfare of the U.S. steel industry.'"  Borusan Br. at 17 (citing *Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962*, 85 Fed. Reg. 40,202 (Dep't of Commerce July 6, 2020) (*Steel Report*)).  But the report cited states otherwise. *See Steel Report*, 85 Fed. Reg. 40,204 ("Based on these findings, the Secretary of Commerce *concludes* that the present quantities and circumstance of steel imports are 'weakening our internal economy' and *threaten to impair the national security* as defined in Section 232.") (emphasis added).  And, even though Borusan argues that, in *Proclamation 9705*, the President "specifically referenced" certain findings from the *Steel Report*, mere references to those findings do not make them the primary focus of *Proclamation 9705*.

Third, Borusan relies on a press release to argue that Section 232 duties remedy injury to the domestic steel industry from imports.  *See* Borusan Br. at 19-20.  The press release says Commerce is to consider the effects of dumping and subsidization.  *See id*.  That such effects were considered does not mean that Section 232 duties were implemented in response to dumping or subsidization.

In sum, unlike Section 201 duties, Section 232 duties are implemented to address national security concerns, not to remedy injury to any domestic industry.

### 2.  <u>Section 232 Duties Are Not Temporary Like Section 201 Duties</u>

Commerce correctly determined that Section 232 duties are not temporary in the same way Section 201 duties are because the statute does not impose any limit on Section 232 duties.

*See* IDM at 23.  Instead, the statute grants the President the broad discretion to determine the duration of Section 232 duties.  *See* 19 U.S.C. § 1862(c) (providing that the President "shall . . . *determine* the nature and *duration of the action that* . . . must be taken to adjust the imports . . . so that such imports will not threaten to impair the national security.") (emphasis added).  In contrast, antidumping and Section 201 duties have a statutory expiration date tied to the cessation of injury.  *See* 19 U.S.C. §§ 1675(d), 2251.  Section 232 duties have no similar requirement of any continued finding of injury.  *See* 19 U.S.C. § 1862(c).  Moreover, Congress did not describe Section 232 duties as "temporary" duties, despite doing so for other duties delegated to the President to implement.  *See*, *e.g.*, 19 U.S.C. § 2132 (describing duties as "temporary" relief and providing that "the President shall proclaim, *for a period not exceeding 150 days* (unless such period is extended by Act of Congress) — a *temporary* import surcharge") (emphasis added).

We recognize that the Court has disagreed with Commerce by stating that Section 232 and Section 201 duties are both temporary because their termination requires no congressional action.  *See Borusan*, 494 F. Supp. 3d at 1374-75.  Respectfully, in *Wheatland Tube*, the Federal Circuit explained that Section 201 duties are generally limited to four years, similar to antidumping duty orders that provide for a termination of duties after five years unless the Government determines that revocation would lead to domestic injury and dumping.  *See* 495 F.3d at 1362.  While termination through congressional action was considered by the Federal Circuit, the lack of an explicit statutory provision terminating Section 201 duties was an equally significant factor that the Federal Circuit considered.  *Id.*  ("Normal custom duties, however, *have* no termination provision and are permanent unless modified by Congress").  Given the lack of an explicit statutory text imposing any time limit for Section 232 duties, we respectfully

submit that Commerce's determination that Section 232 duties are not temporary is at least reasonable and warrants *Chevron* deference.

Borusan contends that Section 232 duties are temporary, relying on the fact that *Proclamation 9705* and the corresponding Section 232 duties have been modified on several occasions. That Section 232 duties can be modified does not make them temporary in the same way Section 201 duties are temporary. Indeed, some modifications can extend Section 232 duties' duration, and Commerce explained that there was "no indication that the circumstances leading the President to impose the duties to protect national security will abate in the foreseeable future" and "no indication when the duties might be lifted." IDM at 23; *see also Proclamation 9705*, 83 Fed. Reg. at 11,628 ("The Secretary shall inform the President of any circumstances that in the Secretary's opinion might indicate the need for further action by the President under section 232 of the Trade Expansion Act of 1962, as amended. The Secretary shall also inform the President of any circumstance that in the Secretary's opinion might indicate that the increase in duty rate provided for in this proclamation is no longer necessary."). Section 232 duties are not temporary.

### 3.  <u>Deducting Section 232 Duties Does Not Create A Double Remedy</u>

Deducting Section 232 duties under 19 U.S.C. § 1677a(c)(2)(A) does not create a double remedy. Section 232 allows imposing duties in addition to any existing duties, as Commerce correctly determined. *See* IDM at 23.

The *Proclamation 9705* explains that the Section 232 duties are *meant to be* imposed in addition to other duties. *Proclamation 9705* states that Section 232 duties are to be imposed in addition to other duties. *Proclamation 9705*, 83 Fed. Reg. at 11,627 ("This rate of duty, which is in addition to any other duties, fees, exactions, and charges applicable to such imported steel articles . . . ."). The Annex to *Proclamation 9705* states that "{a}ll anti-dumping or

countervailing duties, or other duties and charges applicable to such goods shall continue to be imposed, except as may be expressly provide herein." *Proclamation 9705*, 83 Fed. Reg. at 11,630.

Commerce correctly found that the "function of antidumping duties and section 232 duties is separate and distinct, such that there would be no overlap between the two in providing remedies sought by each." IDM at 23. The Statement of Administrative Action accompanying Section 201 stated that "{i}n determining whether to provide {Section 201} relief, and, if so, in what amount, the President will continue the practice of taking into account relief provided under other provisions of law, such as the antidumping" law. *SSWR from Korea*, 69 Fed. Reg. at 19160 (quoting Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, at 964 (1994) reprinted in 1994 U.S.C.C.A.N. 3773). In other words, the President accounted for any potential overlap between Section 201 duties and antidumping duties when setting the level of Section 201 duties. *Id.* In contrast, the President directed that Section 232 duties should be applied in addition to "{a}ll anti-dumping or countervailing duties, or other duties." *Proclamation 9740*, 83 Fed. Reg. at 20,685-87. Indeed, the Federal Circuit recently acknowledged that Section 232 duties are to be applied "*on top of* already-applicable antidumping or countervailing duties." *See American Institute for International Steel, Inc. v. United States*, 806 F. App'x 982, 986 (Fed. Cir. 2020) (emphasis added). Therefore, unlike Section 201 and antidumping duties, for which there is a stated requirement to avoid overlapping remedies, Section 232 has no such requirement. And unlike the legislative history accompanying the antidumping statute that demonstrated that Congress did not intend for antidumping duties to be treated as costs in adjusting export price, no such congressional intent regarding Section 232 duties exists. Thus, Commerce correctly

determined that adjusting for Section 232 duties would not be double-counting.  *See* IDM at 22-23.

Borusan contends otherwise, arguing that: (1) Commerce's reasoning would create a dumping margin where there should be none; (2) this Court should not adopt its own reasoning articulated by this Court in *Borusan*, 494 F. Supp. 3d at 1375, because Commerce did not rely on that decision; and (3) this Court erred in *Borusan*.  We address each in turn.

First, Borusan's argument that Commerce's reasoning would unlawfully create a dumping margin conflicts with the Federal Circuit's precedent.  In *Wheatland Tube*, the Federal Circuit recognized that, for purposes of the antidumping duty law and Section 201, there is an overlap in the injury caused by imports.  495 F.3d at 1365.  On that basis, the Federal Circuit concluded that the remedies overlapped.  *Id.* at 1365 (citing *Nucor Corp. v. United States*, 414 F.3d 1331 (Fed. Cir. 2005)).  In contrast, Section 232 duties are not limited to addressing injury, material or otherwise, to the relevant domestic industry caused by imports.  *See* 19 U.S.C. § 1862.  Again, Section 232 addresses national security concerns, as the statute requires consideration of

> domestic production needed for projected national defense requirements, the capacity of domestic industries to meet such requirements, existing and anticipated availabilities of the human resources, products, raw materials, and other supplies and services essential to the national defense, the requirements of growth of such industries and such supplies and services including the investment, exploration and development necessary to assure such growth.

*Id*. § 1862(d).  Moreover, Borusan's reasoning would apply to any import duty, preventing Commerce from deducting any United States import duty within the meaning of 19 U.S.C. § 1677a(c)(2)(A).

Second, this Court can and should adopt its own reasoning in its prior decision, contrary to Borusan's argument.  Even though Commerce did not use the same words and phrases as the

Court did in *Borusan*, 494 F. Supp. 3d at 1375, the substance of Commerce's reasoning did not depart from the Court's reasoning.  *See* IDM at 21-23.  Indeed, Commerce's reasoning in this administrative review does not materially differ from the reasoning articulated in the final results upheld in *Borusan*, 494 F. Supp. 3d at 1375.  *Compare IDM* at 21-24, *with* Issues and Decision Memorandum for the Final Results of the 2017-2018 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon Steel Standard Pipe and Tube from Turkey, at 27-33, ECF No. 27-5, *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, Court No. 20-00015 (filed Mar. 19, 2020).  For example, Commerce discussed *SSWR from Korea*, 69 Fed. Reg. 19,153, which explained the complimentary natures of Section 201 and the antidumping laws.  IDM at 21, 24; *see also Borusan*, 494 F. Supp. 3d at 1375 (describing same complimentary natures as "statutory interplay").  Likewise, Commerce noted that the President's proclamations explicitly require the imposition of Section 232 duties "in addition to" antidumping duties and that Section 232 duties are uniquely concerned with national security. IDM at 23.  Commerce correctly explained that the "function of antidumping duties and section 232 duties are separate and distinct, such that there would be no overlap between the two in providing the remedies sought by each."  *Id.*  Because this Court upheld Commerce's determination in *Borusan*, the Court should do the same in this case.  *See Nucor Corp.*, 414 F.3d at 1339 (noting that court may uphold agency's decision when "path of the agency may be reasonably discerned"); *accord Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (reasoning that court may uphold agency's decision "of less than ideal clarity").

Third, Borusan disagrees with the Court's reasoning in *Borusan*, arguing that two sources cited in that decision do not show statutory interplay.  Borusan Br. at 24-26; *see also Borusan*,

494 F. Supp. 3d at 1375.  But that portion of the Court's opinion was only a part of the analysis

whether deducting Section 232 duties creates a double remedy, and Commerce has supplied

other rationale, as discussed above.  In any event, contrary to Borusan's argument, the two

sources do show statutory interplay between Section 201 duties and antidumping duties, and the

Court was correct.  *See Borusan*, 494 F. Supp. 3d at 1375.  The Court should continue to uphold

Commerce's determination that deducting Section 232 duties does not create a double remedy.

> **4. Commerce Properly Interpreted Congress's Delegation Of Section 232 Duties And The Harmonized Tariff Schedule Does Not Demonstrate That 232 Duties Are Not Import Duties**

Commerce properly rejected Borusan's argument that Congress's delegation of the

President's authority to issue Section 232 duties requires treating Section 232 duties as special

duties, not United States import duties.  IDM at 21-24.

The President has the authority to impose Section 232 duties on imports that could impair

national security, as permitted by the statute.  *See* 19 U.S.C. § 1862; 19 U.S.C. § 2137; H.R. Rep.

No 571, 93rd Cong. 1st Sess. 28, 35-36 (1973) (noting that bill, later 1974 Trade Act, amended

Section 232, but preserved President's "authority . . . to adjust imports of any article when he

determines that such imports threaten or impair national security").  In this context, the

"particular national security risk is that the 'industry will continue to decline, leaving the United

States at risk of becoming reliant on foreign producers of steel to meet our national security

needs-a situation that is fundamentally inconsistent with the safety and security of the American

people.'"  IDM at 22 (quoting *Proclamation 9705*, 83 Fed. Reg. at 11627).

Borusan cites a Senate report to argue that the "power to set 'normal' customs duties lies

solely with Congress, and thus, according to Borusan, any authority delegated by Congress to the

President to impose duties is by definition an example of a 'special' situation and a 'special'

duty.  Borusan Br. at 27.  That Congress has the power to impose ordinary customs duties does

not mean that only the import duties imposed by Congress are "United States import duties"

under 19 U.S.C. § 1677a(c)(2)(A).  *See also Transpacific Steel LLC*, 4 F.4th at 1332 (applying

nondelegation-doctrine to Section 232 duties and explaining that statute provided intelligible

principle to guide exercise of President's powers).

Borusan also incorrectly relies on *Forest Laboratories, Inc. v. United States*, 403

F.Supp.2d 1348 (Ct. Int'l Trade 2005), to assert that Congress did not grant the President the

authority to modify the HTSUS to include Section 232 duties.  *See* Borusan Br. at 27-28.  In

*Forest Laboratories*, the Court examined whether CBP properly liquidated the plaintiff

importer's entry at an above zero duty rate instead of its requested duty-free rate.  *See Forest

Laboratories, Inc.*, 403 F.Supp.2d at 1350-52.  *Forest Laboratories* involved the President's

removal of certain pharmaceutical products from the HTSUS duty-free category pursuant to the

authority granted by Congress in 19 U.S.C. § 3521 (granting President authority to modify

HTSUS in accordance with World Trade Organization obligations).  *Id.* at 1352.  The Court

explained that because the President, pursuant to his authority granted by Congress to do so,

removed the type of product that the plaintiff was importing from the duty-free category under

the HTSUS subheading prior to the date of entry, CBP's ruling properly categorized the product

under the correct non-duty free HTSUS subheading.  *Id.* at 1352.  Here, adding Section 232

duties to the HTSUS is consistent with the President's authority to impose Section 232 duties.

*See id.* at 1352 (stating that "Congress has given the President limited authority to make

modifications to the HTSUS based solely within the framework of statutorily defined objectives"

and that President acted within his limited authority to modify the HTSUS).

Borusan also claims that the placement of Section 232 duties in chapter 99 of the HTSUS demonstrates that the duties are more similar to remedial duties because that chapter is reserved for temporary actions such as proclamations or legislation.  Borusan Br. at 28-29.  As Commerce has correctly explained, the placement of a duty in the HTSUS is not dispositive of the purpose of that tariff.  IDM at 24.[6]  Section 232 may be in the "special" duty section, but Borusan has not explained how the placement of Section 232 duties in the HTSUS is relevant in Commerce's interpretation of the phrase "United States import duties" under 19 U.S.C. § 1677a(c)(2)(A).

**III.    Commerce's Determination To Deduct Section 232 Duties From Export Price And CEP In Excess Of 25 Percent Is Supported By Substantial Evidence And In Accordance With Law**

Borusan contends that Commerce should have limited its deduction of Section 232 duties to 25 percent and that Commerce's determination to deduct 50 percent was unlawful.  Borusan relies on this Court's ruling in *Transpacific* that collecting Section 232 duties in excess of 25 percent is unconstitutional.  *See* Borusan Br. at 30.  This argument fails for two reasons.

First, the Federal Circuit reversed this Court's ruling in *Transpacific*.  *See Transpacific Steel LLC*, 4 F.4th at 1319.  Borusan argues that the *Transpacific* appeal was not yet final because of a pending combined petition for rehearing and rehearing *en banc*, but the Federal Circuit has denied that petition.  *Transpacific Steel LLC v. United States*, No. 20-2157 (Fed. Cir. Sep. 24, 2021), ECF No. 76 (order denying rehearing).  And although a petition for *certiorari* remains pending before the Supreme Court, the Federal Circuit's mandate has not been stayed.  *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1380 (Fed. Cir. 2020) (providing that pending petition for *certiorari* does not warrant staying mandate).  The Federal Circuit's decision in *Transpacific* is therefore final and binding upon this Court.

---

[6] The HTSUS is only a "pragmatic way of implementing. . .  collection {of duties}."  69 Fed. Reg. at 19,160.

Second, Commerce correctly declined to make any adjustment to limit Section 232 duties to 25 percent because Borusan had adduced no evidence that any adjustment was warranted. Three months after filing its administrative case brief, Borusan submitted letters to Commerce requesting adjustments in light of this Court's *Transpacific* ruling and the status of refunds for the collected Section 232 duties.  Borusan Notification Regarding Section 232 Tariffs (Dec. 4, 2020) (P.R 122); Borusan Notification Regarding Refund of Section 232 Tariffs (Feb. 18, 2021) (P.R. 125); *see also* Borusan Administrative Case Brief (Sept. 16, 2020) (P.R. 114) (C.R. 123).[7]  In response, Commerce found that the record contained no evidence showing: (1) that refunds have been provided by CBP in regard to the challenged Section 232 duties; (2) that the exporters or producers set prices of subject merchandise relying on a promise of potential post-sale refunds pursuant to subsequent court decisions; and (3) post-sale refunds from the exporters and producers to the ultimate consumers.  *See* Commerce Letter Regarding Borusan's Section 232 Notification (Mar. 15, 2021) (P.R. 130).

Borusan provides excuses for its failure to offer any evidence, but none has any merit. As for the first issue that Borusan submitted no evidence of refunds from CBP, Borusan states that it received the refunds between February 17, 2021 and March 23, 2021, but cites no evidence.  Borusan Br. at 32.  Although Borusan argues that Commerce should have issued a "follow up supplemental questionnaire," the interested party in possession of the relevant information has the burden of showing the amount and nature of a requested adjustment.  *See, e.g.*, 19 C.F.R. § 351.401(b)(1); *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1295

---

[7] *Proclamation 9772* went into effect on August 13, 2018, and increased Section 232 duties on imports from Turkey from 25 percent to 50 percent.  83 Fed. Reg. 40,429. *Proclamation 9886* subsequently lowered the tariffs to 25 percent in May 2021.  84 Fed. Reg. 23,421 (May 16, 2021).  This period overlapped with four months of the period of review subject to this appeal.

(Fed. Cir. 2021) ("In the course of an investigation or review, the burden of creating an adequate record lies with interested parties.") (internal citation omitted); *Yama Ribbons and Bows Co., Ltd. v. United States*, 865 F. Supp. 2d 1294, 1299 (Ct. Int'l Trade 2012).  And even under Borusan's version of the facts, Borusan did not receive all the refunds until March 23, 2021 — one week after the *Final Results* were issued on March 16, 2021.  *See* Borusan Br. at 32.

As for the last two issues, Borusan argues that those issues are irrelevant to the issue of whether "Commerce can deduct duties from U.S. price that have been declared unlawful and have been refunded."  *Id.* at 32-33.  But as discussed above, the deduction of Section 232 duties has been held lawful.  *Borusan*, F. Supp. 3d at 1373; *see also Transpacific Steel LLC*, 4 F.4th at 1319.  And Borusan's problem was that it offered no evidence in support of its request for adjustments.  *See* Commerce Letter Regarding 232 Duties.  Borusan continues to offer no evidence.  Commerce's determination is supported by substantial evidence and in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Borusan's motion and sustain Commerce's final results.

Respectfully Submitted,

BRYAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Frankling E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ In K. Cho
OF COUNSEL:                In K. Cho
JonZachary Forbes          Trial Attorney

Staff Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0463
Facsimile:   (202) 305-7644
Email: In.K.Cho@usdoj.gov

November 5, 2021

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Standard Chambers Procedure 2(B)(2) of the U.S. Court of International Trade, I certify that this brief contains 8,609 words and complies with the word-count limit set forth in Standard Chambers Procedure 2(B)(1).  To make this certification, I have relied on the word-count feature of Microsoft Word.

/s/ In. K. Cho

IN K. CHO
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile:  (202) 305-7644
Email:      In.K.Cho@usdoj.gov

November 5, 2021                                        *Attorneys for Defendant*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
|
BORUSAN MANNESMANN BORU SANAYI )
VE TICARET A.Ş. AND BORUSAN )
MANNESMANN PIPE U.S. INC., )
)
          Plaintiffs, )
)
      v. )     Court No. 21-00132
)
UNITED STATES, )
)
          Defendant, )
)
and )
)
WHEATLAND TUBE AND NUCOR )
TUBULAR PRODUCTS INC., )
)
          Defendant-Intervenors. )
_____)

**PROPOSED ORDER**

    Upon consideration of plaintiffs' Motion for Judgment upon the Agency Record pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, the response brief filed by the United States, and all other papers, it is hereby:

    **ORDERED** that plaintiffs' Rule 56.2 Motion for Judgment upon the Agency Record is denied.

Dated: _____
     New York, New York       _____
                             JUDGE