THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE JANE A. RESTANI, SENIOR JUDGE

|  |  |  |
|---|---|---|
| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.Ş. AND BORUSAN MANNESMANN PIPE U.S. INC., | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| UNITED STATES, | ) ) | Court No. 21-00132 |
| Defendant, | ) ) |  |
| and, | ) ) |  |
| WHEATLAND TUBE COMPANY AND NUCOR TUBULAR PRODUCTS INC., | ) ) ) |  |
| Defendant-Intervenors. | ) ) ) |  |

**PLAINTIFFS BORUSAN MANNESMANN BORU SANAYI VE TICARET A.Ş. AND BORUSAN MANNESMANN PIPE U.S. INC.'S REPLY BRIEF IN SUPPORT OF THEIR <u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

                                                 Julie C. Mendoza
                                                 Donald B. Cameron
                                                 R. Will Planert
                                                 Brady W. Mills
                                                 Mary S. Hodgins
                                                 Edward John Thomas III
                                                 Jordan L. Fleischer

                                                 **MORRIS, MANNING & MARTIN LLP**
                                                 1401 Eye Street, N.W., Suite 600
                                                 Washington, D.C. 20005
                                                 (202) 408-5153

November 24, 2021                          *Counsel to Plaintiffs Borusan Mannesmann*
                                                 *Boru Sanayi ve Ticaret A.Ş. and Borusan*
                                                 *Mannesmann Pipe U.S. Inc.*

**TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................................... 2

    A. Commerce Failed To Follow Its Framework For Determining Whether Section 232 Duties Are Special Duties, Not Normal Customs Duties And Commerce's Decision Does Not Support Its Finding That Section 232 Duties Are *U.S. Import Duties*, Deductible From U.S. Price .................................................................. 2

        1. Section 232 Duties Are Remedial ......................................................................... 4

        2. Section 232 Duties Are Temporary ...................................................................... 6

        3. Double Remedy .................................................................................................... 7

II. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Inst. for Int'l Steel v. United States*,
  376 F. Supp. 3d 1335 (Ct. Int'l Trade 2019), *cert denied*, 139 S. Ct. 2748,
  *aff'd*, 806 F. App'x 982 (Fed. Cir. 2020), *cert denied*, 141 S. Ct. 133 ...................................... 4

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................................................................ 6

*Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. v. United States*,
  494 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ............................................................... 2, 3, 4, 6

*Transpacific Steel LLC v. United States*,
  4 F.4th 1306 (Fed. Cir. 2021) ................................................................................................ 9-10

*Wheatland Tube Company v. United States*,
  495 F.3d 1355 (Fed. Cir. 2007) ........................................................................................ *passim*

**Statutes**

19 U.S.C. § 1671d(b)(1)(B) ................................................................................................................ 5

19 U.S.C. § 1673d(b)(1)(B) ................................................................................................................ 5

19 U.S.C. § 1677a(c)(2)(A) ................................................................................................................ 8

19 U.S.C. § 1862 ................................................................................................................................... 2

19 U.S.C. § 2251 ................................................................................................................................... 2

**Other Authorities**

*Benzyl Paraben From Japan*,
  Inv. No. 731-TA-462, USITC Pub. 2355 (Feb. 1991) (Final) ................................................. 5

*Certain Dried Salted Codfish from Canada*,
  Inv. No. 731-TA-199, USITC Pub. 1711 (July 1985) (Final) ................................................. 5

*Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United
  States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ............................................................................. 4

*Proclamation 9772 of August 10, 2018 Adjusting Imports of Steel Into the United
  States*, 83 Fed. Reg. 40,429 (Aug. 15, 2018) ......................................................................... 8-9

*Publication of a Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962, as Amended*, 85 Fed. Reg. 40,202 (Dep't Commerce July 6, 2020) ................................. 5

*Refillable Stainless Steel Kegs from Mexico*, Inv. No. 731-TA-1427, USITC Pub. 4976 (Oct. 2019) (Final) ................................................. 5

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't Commerce Mar. 19, 2018) ........................................... 4

*Salmon Gill Fish Netting of Manmade Fibers From Japan*, 47 Fed. Reg. 14,979 (Int'l Trade Comm'n Apr. 7, 1982) ................................................................................ 5

*Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153 (Dep't Commerce Apr. 12, 2004) ................................................................................................ 2

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ................................... 4

THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.Ş. AND BORUSAN MANNESMANN PIPE U.S. INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and, <br><br> WHEATLAND TUBE COMPANY AND NUCOR TUBULAR PRODUCTS INC., <br><br> Defendant-Intervenors. | Court No. 21-00132 |

**PLAINTIFFS BORUSAN MANNESMANN BORU SANAYI VE TICARET A.Ş. AND BORUSAN MANNESMANN PIPE U.S. INC. REPLY BRIEF IN SUPPORT OF THEIR <u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

In accordance with Rule 56.2 of the Rules of this Court, and the July 8, 2021 Amended Scheduling Order, ECF No. 29, Plaintiffs Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. ("BMB") and Borusan Mannesmann Pipe U.S. Inc. ("BMP") file their reply brief in opposition to the November 5, 2021 response briefs filed by Defendant, the United States, and Defendant-Intervenors Wheatland Tube and Nucor Tubular Products Inc. *See* Def.'s Resp. to Pls.' Mot. for J. Upon the Agency R. (Nov. 5, 2021), ECF No. 35 ("Def.'s Br."); Wheatland Tube Co.'s Mem. in Resp. to Pls.' Mot. for J. on the Agency R. (Nov. 5, 2021), ECF No. 33 ("Def.-Intervenors' Br."); Def.-Intervenor Nucor Tubular Products Inc.'s Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R. (Nov. 5, 2021) ("Nucor's Br."). As discussed herein, the arguments made by

1

Defendant and Defendant-Intervenors are unpersuasive and should be rejected. The Court should grant BMB's Rule 56.2 Motion for Judgment Upon the Agency Record and order the U.S. Department of Commerce ("Commerce") to recalculate the final dumping margin of BMB accordingly.

I. **ARGUMENT**

    A. **Commerce Failed To Follow Its Framework For Determining Whether Section 232 Duties Are Special Duties, Not Normal Customs Duties And Commerce's Decision Does Not Support Its Finding That Section 232 Duties Are *U.S. Import Duties*, Deductible From U.S. Price**

Defendant's attempt to distinguish its prior determination in *Stainless Steel Wire Rod from the Republic of Korea: Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 19,153 (Dep't Commerce Apr. 12, 2004) ("*SSWR from Korea*") and the court's holding in *Wheatland Tube Company v. United States*, 495 F.3d 1355 (Fed. Cir. 2007) from the facts of this case once again is limited to reciting various distinctions between the operation of Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, and the operation of other trade remedy statutes such as Section 201 of the Trade Act of 1974, 19 U.S.C. § 2251. Def.'s Br. at 11-16. However, these are not responsive to the issue in this appeal that Commerce failed to follow the reasoning and framework it used in *SSWR from Korea*. Commerce's decision in *SSWR from Korea* and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") opinion in *Wheatland* set out a mode of analysis to determine whether Section 232 duties were "more akin" to special duties or "more akin" to normal customs duties. *Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. v. United States*, 494 F. Supp. 3d 1365, 1376 (Ct. Int'l Trade 2021). Such a balanced analysis is completely absent in Commerce's decision in this case. Defendant in its brief once again fails to come to terms with the question of whether Section 232 duties are "like"

normal custom duties. The government never addresses that question in a substantive way in its brief or offers any reasoning to support such a finding. Def.'s Br. at 7-20.

With all due respect to this Court, Commerce's analysis in *Wheatland* did not depend on a finding that Section 201 duties are "so unique" that they are not deducted from the price paid even though they are duties on imports. *Borusan*, 494 F. Supp. 3d at 1373. In this case, Commerce also did not rely on the lack of "statutory interplay" to find that there was no "double remedy." PR Doc. 129 at 22-23; *Borusan*, 494 F. Supp. 3d at 1375. The government in its brief has embraced the Court's earlier finding that the lack of statutory interplay supports a finding that there is no double remedy imposed. Def.'s Br. at 17. However, Commerce never made such a finding. Moreover, Plaintiffs have demonstrated that "statutory interplay" does exist between Section 232 and the unfair trade laws such that "statutory overlap" with unfair trade laws is not a distinguishing feature between Section 201 duties and Section 232 duties. Br. of Pls. Borusan Mannesmann Boru Sanayi ve Ticaret A.Ş. and Borusan Mannesmann Pipe U.S. Inc. in Supp. of their Mot. for J. on the Agency R. at 24-26 (Sept. 2, 2021), ECF No. 31 ("Pls.' Initial Br.").

Commerce's decision was sustained by the Federal Circuit in *Wheatland* because the analysis considered the similarities of Section 201 duties to other special duties and the differences between Section 201 duties and normal duties. Specifically, in *Wheatland* the Court stated that "Commerce found several significant similarities between § 201 safeguard duties and antidumping duties and determined that § 201 duties are 'special dumping duties' because they are '*more like AD {antidumping duties} in purpose and function than they are like ordinary customs duties*.'" 495 F.3d at 1362 (emphasis added) (alteration in original). That analysis considered three key features of Section 201 to determine its purpose and function.

3

1. **Section 232 Duties Are Remedial**

In its brief, Defendant, argues that Section 232 duties are not remedial because they are imposed to address threats to national security, rather than to remedy the adverse effects of imports *per se*. Def.'s Br. at 11-14. Thus, Defendant claims that Section 232 duties are not remedial because they "do not focus on economic effects, but rather they focus on U.S. national security interests." *Id*. at 12. As this Court held, "{e}ven though there is a broader statutory purpose underlying the imposition of Section 232 duties, the purpose of Section 232 duties is also remedial in a broad sense." *Borusan*, 494 F. Supp. 3d at 1374. There is simply no way to square Commerce's decision that the Section 232 duties are not remedial with the statute or *Proclamation 9705 of March 8, 2018 Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) and Defendant's attempt to do so is unconvincing.[1] Plaintiffs' opening brief examined the language of the statute itself, the Proclamation, and the specific reliance upon enumerated adverse economic effects on the domestic steel industry by the Secretary of Commerce and the President in the Section 232 steel report as sufficient evidence to

---

[1] This Court, Commerce's Bureau of Industry and Security, U.S. Customs and Border Protection, and the U.S. International Trade Commission ("ITC") have all described Section 232 as "remedial." *See Am. Inst. for Int'l Steel v. United States*, 376 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2019) (describing the President's action as "remedial" several times in the same paragraph), *cert denied*, 139 S. Ct. 2748 (mem.), *aff'd*, 806 F. App'x 982 (Fed. Cir. 2020), *cert denied*, 141 S. Ct. 133 (mem.); *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,054-55 (Dep't Commerce Sept. 11, 2018); *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,109 (Dep't Commerce Mar. 19, 2018); *Trade Remedy Laws*, U.S. INT'L TRADE COMM'N, available at https://www.usitc.gov/trade_remedy_laws.htm; *Trade Remedies*, U.S. CUSTOMS & BORDER PROT., available at https://www.cbp.gov/trade/programs-administration/trade-remedies.

impose remedies for a "domestic industry."[2]  Pls.' Initial Br. at 15-19.  This evidence is overwhelming and will not be repeated here.

Defendant and Defendant-Intervenors also rely on the mistaken distinctions between Section 232 and trade remedies.  Def.'s Br. at 12; Def.-Intervenors' Br. at 6 and 13-14.  Specifically, Defendant-Intervenors represented that the ITC's injury findings in unfair trade cases do not extend to "vital nascent industries."  Def.-Intervenors' Br. at 6 and 13-14 (citing *Borusan*, 494 F. Supp. 3d at 1374).  In fact, Section 232 is not unique in considering "vital nascent industries."  The antidumping and countervailing duty statute also allows the ITC to consider whether "the establishment of an industry in the United Sates is materially retarded," which is a closely related concept.  19 U.S.C. §§ 1671d(b)(1)(B), 1673d(b)(1)(B).  The ITC has made material retardation findings when the domestic producers had not yet commenced production, when the domestic producers had no production during the POI, and where there was no established domestic industry.  *Refillable Stainless Steel Kegs from Mexico*, Inv. No. 731-TA-1427, USITC Pub. 4976 (Oct. 2019) (Final); *Benzyl Paraben From Japan*, Inv. No. 731-TA-462, USITC Pub. 2355 (Feb. 1991) (Final); *Certain Dried Salted Codfish from Canada*, Inv. No. 731-TA-199, USITC Pub. 1711 (July 1985) (Final); *Salmon Gill Fish Netting of Manmade Fibers From Japan*, 47 Fed. Reg. 14,979 (Int'l Trade Comm'n Apr. 7, 1982).

---

[2] *Publication of a Report on the Effect of Imports of Steel on the National Security: An Investigation Conducted Under Section 232 of the Trade Expansion Act of 1962, as Amended*, 85 Fed. Reg. 40,202, 40,209-24 (Dep't Commerce July 6, 2020).  The Secretary supported his conclusion that steel imports were "in such quantities" as to "{a}dversely {i}mpact the {e}conomic {w}elfare of the U.S. {s}teel {i}ndustry," *id.* at 40,210, with findings that steel imports were increasing; that imports held a high market share and exhibited a high import to export ratio; that domestic producers faced downward price pressure; that the domestic industry was suffering from plant closures and eroding steel mill capacity; that domestic employment was declining; and that the domestic industry was in financial distress, *id*. at 40,210-20.

### 2. Section 232 Duties Are Temporary

Commerce's analysis of whether the Section 232 duties are temporary once again fails to explain why Section 232 duties are "more akin" to normal customs duties. Defendant argues that Section 232 duties are not temporary because there is no specific fixed expiration date. Def.'s Br. at 14-16. But, that does not make them "akin" to normal customs duties. Normal customs duties are permanent and can only be modified by Congress. *Wheatland*, 495 F.3d at 1362. Defendant concedes that the statute gives the President complete discretion over the duration of the duties, so the duties can be lifted by the President at any moment. Def.'s Br. at 15.[3]

As this Court held in *Borusan*, "Section 232 duties and Section 201 duties are both temporary in that no Congressional action is needed to end them. . . . {Thus,} {t}he difference in how the duties are time limited does make Section 232 significantly more permanent than Section 201." 494 F. Supp. 3d at 1374-75. While Defendant acknowledges the Court's previous finding on this factor, it still argues that because there is no explicit statutory text imposing a time limit for Section 232 duties, Commerce's determination that the duties are not temporary is reasonable and warrants deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Def.'s Br. at 15-16. Plaintiffs submit that Commerce's determination does not deserve deference here because it is patently unreasonable to conclude that Section 232 duties are not temporary when the President has issued several Proclamations to remove the Section 232 duties on certain countries, when Commerce itself has removed the Section 232 duties on imports of steel from all countries for over one hundred steel products, and when recent negotiations have concluded in the removal of Section 232 duties on significant

---

[3] As discussed in Plaintiffs' opening brief, the President has already made multiple adjustments to the Section 232 duties on steel imports, including raising, and then lowering, the duty rate on imports from Turkey and removing all Section 232 duties in imports from Canada and Mexico. Pls.' Initial Br. at 20-21.

quantities of steel from Europe. Pls.' Initial Br. at 20-21. There is thus nothing permanent about Section 232 duties.

### 3. Double Remedy

In their brief, Plaintiffs demonstrated that just as with Section 201 duties, subtracting Section 232 duties from U.S. price in the dumping margin calculation imposes the Section 232 duties a second time in the form of a dollar-for-dollar increase in dumping margins. Pls.' Initial Br. at 22-24; *see also Wheatland*, 495 F.3d at 1363. In its response brief, Defendant argues that there is no double remedy here because the Presidential Proclamation provides that the Section 232 duties are "in addition to" already applicable antidumping and countervailing duties. Def.'s Br. at 16-17. No one disputes that Section 232 duties apply in addition to any other antidumping duties that otherwise apply to the same goods. The question is whether the Section 232 duties should also operate to *increase* the antidumping duties that otherwise would apply. That is a question to be determined under the antidumping law, and the President has no authority to modify the operation of the antidumping law by means of a Presidential Proclamation issued pursuant to Section 232. Furthermore, as Defendant concedes, both Commerce and the President were aware of the fact that there were numerous antidumping orders on steel products. *See id.* at 14 and 17. It is reasonable to presume that the President and Commerce therefore have understood the operation of the antidumping law, including the fact that while normal customs duties are subtracted from U.S. price, special remedial duties are not.

In *Wheatland*, the Federal Circuit explained why subtracting Section 201 duties from U.S. price would improperly double the Section 201 duties imposed by the President:

> Where there is a pre-existing dumping margin, deducting the 201 duties from U.S. prices effectively would collect the 201 duties twice-first as 201 duties, and a second time as an increase in that dumping margin. Where there was no pre-existing dumping margin, the deduction of 201 duties from U.S. prices in an AD proceeding could create a margin.

7

495 F.3d at 1363 (quoting *SSWR from Korea*, 69 Fed. Reg. at 19,160).  The same is true of Section 232 duties, which operate to inflate dumping margins in exactly the same manner.  Defendant's only response to this point is to argue that Plaintiffs' reasoning "would apply to any import duty" and thus would preclude Commerce even from deducting normal import duties under 19 U.S.C. § 1677a(c)(2)(A).  Def.'s Br. at 18.  All parties agree that the antidumping statute expressly requires deducting normal customs duties.  Such duties are permanent and set by Congress.  However, Commerce – and the Federal Circuit – reasoned that deducting Section 201 duties from U.S. price effectively doubled the remedy imposed by the President and that this furnished an additional reason why special remedial duties such as Section 201 are not to be deducted from U.S. price as United States import duties.  Defendant's brief fails to provide any plausible distinction to support its argument that the antidumping statute provides for the double-imposition of the duties set by the President under Section 232 but not duties set by the President under Section 201, both of which would impose a double remedy.  Given this obvious conclusion, Defendant maintains that the President has the authority to modify the antidumping law and reinterpret the meaning of U.S. import duties in the dumping statute passed by Congress.  The President has no such authority.  Therefore, its arguments in this regard must be rejected.

Defendant-Intervenors' purely hypothetical example regarding the double remedy factor finds no support in the decision by Commerce, does not distinguish Section 232 duties from Section 201 duties, and has no supporting record evidence.  Def.-Intervenors' Br. at 15.  Defendant-Intervenors' example assumes that every dollar of Section 232 duties paid by the importer automatically increases the gross unit price to the first unaffiliated U.S. customer.  *Id*.  In the case of the 50 percent duty levels imposed on Turkey, the effect of such tariffs was confined to imports from Turkey.  *Proclamation 9772 of August 10, 2018 Adjusting Imports of*

8

*Steel Into the United States*, 83 Fed. Reg. 40,429 (Aug. 15, 2018).  In other words, these tariff increases on Turkey alone had little effect on general price levels in the U.S. market that would have absorbed an immediate 25 percent increase in Turkish import prices.  Moreover, the decision to increase the Section 232 duties from 25 percent to 50 percent was sudden and entirely unexpected and was directed solely at Turkey.  Early in the morning on August 10, 2018, former President Donald Trump announced via Twitter that he had authorized a doubling of the section 232 tariffs on steel from Turkey.  Donald J. Trump (@realDonaldTrump), TWITTER (Aug. 10, 2018, 5:47 A.M.), http://twitter.com/realdonaldtrump/status/ 1027899286586109955 {https://web.archive.org/web/20180810125229/https://twitter.com/realDonaldTrump/status/1027899286586109955}.  The President signed Proclamation 9772 that same day, which made the doubling of the section 232 duties effective as of August 13, 2018.  The Proclamation did not even appear in the Federal Register until two days after the doubling of the tariffs was already effective.

The manner in which the increased Section 232 duties were imposed illustrates precisely why these duties are not like ordinary customs duties and why they should not be treated as such in the dumping margin calculation.  Regular customs duties are a structural feature of the U.S. market.  The duty rates are stable and remain in place until amended by Congress.  It is therefore reasonable to treat such duties as part of the normal cost of doing business in the United States, and to subtract them from the starting price in order to compare U.S. and home market prices on an apples-to-apples basis.  But, Section 232 duties (like safeguard duties) are special duties that are temporary and can be imposed for remedial purposes.  The President can impose such duties, and, according to the Federal Circuit, the duties may be increased at any time at the sole discretion of the President.  *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir.

2021). Foreign producers have no realistic way to account for those duties in setting their prices to the U.S. market. Consequently, subtracting those duties from U.S. price does not result in an apples-to-apples pricing comparison, but rather, distorts that comparison. Subtracting section 232 duties from the starting price thus serves no purpose under the antidumping law other than to punitively increase duties, which is the essence of a double remedy.

## II.     CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court (i) hold that Commerce's *Final Results* are not supported by substantial evidence and are otherwise contrary to law, (ii) remand the case to Commerce with instructions to correct the errors identified by the Court and recalculate BMB's dumping margin, and (iii) order such further relief that the Court deems just and proper.

Respectfully submitted,

/s/ Julie C. Mendoza
Julie C. Mendoza
Donald B. Cameron
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Edward J. Thomas III
Jordan L. Fleischer

**MORRIS, MANNING & MARTIN LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel to Plaintiffs Borusan Mannesmann Boru Sanayi ve Ticaret A.S. and Borusan Mannesmann Pipe U.S. Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,028 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ **Julie C. Mendoza**